744

## ST. PAUL FIRE & MARINE INS. CO. v. KAUFMAN COMPRESS CO.

### No. 8322.

Circuit Court of Appeals, Fifth Circuit.

Jan. 24, 1938.

For original opinion, see 93 F.2d 156.

L. E. Elliott and A. D. Brundidge, both of Dallas, Tex., for appellant.

Dan MacDougald, of Atlanta, Ga., and Austin Y. Bryan, Jr., of Houston, Tex., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

### PER CURIAM.

Appellant's chief reliance in its petition for rehearing seems to be a vehement controversion of the statement in the court's opinion, that the appellant "devised the warehouse receipt forms and issued them as sufficient to effect coverage."

Since this was stated arguendo, and not as the ground of the decision, and since the petition presents no sufficient reason for its granting, we should, but for appellant's expressed "astoundment" at the statement challenged, overrule its motion without more. In view, however, of its apparent sense of grievance, we have re-examined the record, and, expanding the statement, we reaffirm the substance of what we said, that the warehouse receipt forms were used and accepted, until on this appeal, as sufficient to effect coverage under the cotton reporting form devised and filed by Cravens Dargan and Company, the Texas agents for appellant.

Mr. Jones, of Cravens Dargan and Company, testified:

"At the time of preparing these special filings I had read the certificate that the warehouseman had to sign, that the cotton in the warehouse was insured to the extent of its market value. These filings were made for the purpose of enabling the warehouseman to sign the certificates.

"Along about September 19, 1934, I circularized our agents regarding this cotton reporting form, and the various types of insurance that were in force and effect on Government loan cotton."

Mr. Richard McLarry testified to writing the insurance for the Kaufman Compress Company, and to a letter signed by Price Johnson, an employee of Cravens, Dargan & Company, general agents for the company. He testified "he was one of the active ones in the management and procurement of cotton insurance, on this cotton reporting form. It was a new form coming out—I understood it was different."

The letter referred to read in part:

"Mr. Richard McLarry:

"The reporting form cotton policy we are writing provides coverage for all of the cotton in the storage location on which the warehouseman has assumed liability by issuing insured receipts."

In addition to the cotton sued for in this case, the Compress Company had insurance on a great many other bales. Mr. Shannon Jones testified: "This is the policy we are suing on in this case. We took out this policy for $400,000.00 and I reported how many bales I took in the loan every morning to Stewart Nash, representing Cravens, Dargan & Company. I only intended to take that policy out to insure the cotton on which we had issued warehouse receipts. We stamped the Government receipts 'insured.' We did not stamp any receipts 'insured' save the Government loan cotton. I did not report to the St. Paul Fire & Marine Insurance Company any other cotton in bales in our warehouse other than the government loan cotton."

Mr. Easley, the adjuster for Cravens Dargan and Company, testified:

"I handed the statement showing a certain number of bales of cotton, to Mr. Jones. At that time I had not seen the Hartford Insurance policy. At the time I handed Mr. Jones this statement, I told him that that was my idea of what the liability to the compress company, if any, would be, based on the figures that we had gotten from the warehouse receipts.

"It was my understanding that shortly after I got to Kaufman, Mr. Jones told me that he only had insured receipts represent-

ing cotton that had been pledged as collateral for loans secured from the C. C. C. and other lending agencies. We paid all the losses of the Compress where there was no other insurance."

Thus it appears without dispute that appellant's agents devised the cotton reporting form; that they advised their agents that the cotton would be covered under it where the warehouseman had assumed liability by issuing insured receipts. They never challenged the form of the receipts, nor made any question about liability on them until in this court, except as to proof of amounts and as to the existence of other insurance. From this testimony the inference is, we think, inescapable that, if the agents did not devise, they accepted, the stamped insured receipts as sufficient, and that it is a quibble over words to contend for a different effect, where the receipts were only approved and accepted, from that which would follow if they had been devised.

The petition is overruled.